IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

ERNEST VANDALL,

            Plaintiff,

v.                                               CIVIL ACTION NO. 5:17-cv-03544

WELLS FARGO BANK, N.A.,

            Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant Wells Fargo Bank, N.A.'s Motion for Summary Judgment* (Document 49) and *Memorandum in Support* (Document 50), the *Plaintiff's Response in Opposition* (Document 51), and the *Defendant's Reply in Support* (Document 52), as well as the Plaintiff's *Complaint* (Document 1-2) and all attached exhibits. For the reasons stated herein, the Court finds that the motion should be granted.

**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

The Plaintiff, Mr. Ernest Vandall, initiated this action with the filing of a complaint in the Circuit Court of Greenbrier County, West Virginia, on May 17, 2017. Mr. Vandall named Wells Fargo Bank, N.A. ("Wells Fargo") as the sole Defendant. Pursuant to its *Notice of Removal* (Document 1), Wells Fargo removed the case to this Court on July 6, 2017, citing diversity jurisdiction.

In 2009, Mr. Vandall purchased a home at 213 2nd Street, Rainelle, West Virginia. In order to purchase the home, Mr. Vandall sought a mortgage from Wells Fargo and eventually executed a promissory note and a Deed of Trust. (*See*, Def.'s Mot. for Sum. Judg., Ex A) (*see also*, Ernest Vandall Depo., at 12:2- 13:22, Document 51-2.) During the origination process, Wells Fargo determined that the property Mr. Vandall was purchasing was located in an area that the Federal Emergency Management Agency ("FEMA") designated as a Special Flood Hazard Area ("SFHA"). (Def.'s Mot. for Sum. Judg., Ex. C.) Due to this designation, Wells Fargo required Mr. Vandall to purchase flood insurance on the home in order to obtain the mortgage. Shortly thereafter, Mr. Vandall acquired a flood insurance policy through Nationwide. Importantly, however, because Wells Fargo required Mr. Vandall to obtain the flood insurance, Wells Fargo would increase Mr. Vandall's monthly mortgage payment by one-twelfth of the total annual flood insurance premium, hold that money in an escrow account, and use it to pay the flood insurance premium when it became due. (*Id.* at Ex. B, Deed of Trust, ¶ 3.) This process continued through 2012, and Mr. Vandall received statements from Wells Fargo reflecting the payments being made from the escrow account. (*Id.* at Ex. G.)

In October 2012, FEMA amended its Flood Insurance Rate Map for the Rainelle area, and subsequently determined that Mr. Vandall's property was no longer inside an SFHA. Due to this change, Wells Fargo determined that Mr. Vandall was no longer required to maintain flood insurance. On November 12, 2012, Wells Fargo generated a letter entitled "Flood Insurance Notification" sent via first-class mail to Mr. Vandall informing him of this update. (*Id.* at Ex. J.) This notification stated that, "[s]ince [Mr. Vandall's] property is no longer located in a required flood zone, your flood insurance is now OPTIONAL." (*Id.*) (emphasis in original.) This

notification did not affect the cancellation of Mr. Vandall's flood insurance policy, however. In fact, because of Wells Fargo's escrow method of payment, Mr. Vandall's 2012-2013 flood insurance premium had previously been paid and the policy remained in effect until September of 2013. On November 13, 2012, the very next day after sending the notification regarding the change in required flood insurance, Wells Fargo sent Mr. Vandall a correspondence providing his monthly payment and detailing the amount in his escrow account. (*Id.* at Ex. N.) Because the flood insurance premium for 2012 through 2013 had been paid in full, and because the insurance was no longer required, this November 2012 statement showed that Mr. Vandall's monthly mortgage payment would be reduced. (Id.) The statement also included a check refunding him the balance of the escrow account that had been deducted to pay for flood insurance which was no longer required. (*Id.*) Mr. Vandall alleges that, although he received and looked at all the mail delivered to the residence in question, he did not receive the notice from Wells Fargo informing him that flood insurance was no longer required. (Ernest Vandall Depo., at 35:10-23) (Document 51-2.) Mr. Vandall does not, however, dispute receiving the updated escrow notice reflecting the subtraction of the flood insurance payment and the refund check that was attached. (*Id.* at 38:17-39:2; 45:3-6.)

On August 2, 2013, nearly nine months after Wells Fargo sent the flood insurance update notification and the updated escrow statement including a check, Nationwide sent Mr. Vandall a Flood Insurance Policy Renewal Premium Notice. (*See*, Def.'s Mot. for Sum. Judg., Ex. Q.) This notice included Mr. Vandall's address and policy number, and informed him that his flood insurance would expire on September 16, 2013. (*Id.*) The notice also included the amount of the premium he could owe to renew the insurance policy for the following year. (*Id.*) Mr.

3

Vandall did not pay the premium to renew the flood insurance policy, and on September 17, 2013, Nationwide sent him a notice informing him that the flood insurance policy had expired, but that he could reinstate the policy by paying the annual premium. (Def.'s Mot. for Sum. Judg., Ex. R.) Mr. Vandall alleges that he did not receive either of these notices from Nationwide and never reinstated the policy. (Ernest Vandall Depo., at 51:1-52:7.)

In June 2016, Rainelle and the surrounding areas of Greenbrier County "experienced catastrophic flooding," which severely damaged Mr. Vandall's home. (Compl., at ¶ 11-12.) After the water subsided, Mr. Vandall contacted the National Flood Insurance Program, administered by FEMA, "to make a claim for the extensive damage to his house and its contents." (*Id.* at ¶ 12.) FEMA informed Mr. Vandall that he did not have flood insurance, however, and Mr. Vandall proceeded to call Wells Fargo. Wells Fargo informed Mr. Vandall that he did not have flood insurance because, as the 2012 notices sent to him stated, the flood insurance was no longer required on his mortgage, and he had allowed the flood insurance policy to lapse. Mr. Vandall alleges in his complaint that Wells Fargo canceled his flood insurance and continued to charge him for the cost of flood insurance even after the insurance had lapsed. He filed his complaint thereafter.

**STANDARD OF REVIEW**

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v.*

*Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may

5

reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

**DISCUSSION**

Wells Fargo moves for summary judgment as to each count of the Plaintiff's complaint. The Plaintiff alleged the following causes of action: Count I—Declaratory Relief, Count II—Breach of Contract, Count III—Breach of Covenants of Good Faith and Fair Dealing, Count IV—Negligence, Count V—Unjust Enrichment, Count VI—Conversion, Count VII—Detrimental Reliance, Count VIII—Fraud, and Count IX—Punitive Damages. Importantly, in each of these counts, Mr. Vandall claims that Wells Fargo is liable for his damages because it canceled his flood insurance and continued to retain payments from him for that flood insurance.

Wells Fargo argues that it is entitled to summary judgment on all of the Plaintiff's claims because it was not responsible for and did not cancel the Plaintiff's flood insurance. Wells Fargo asserts that the contract for the flood insurance policy was solely between Nationwide and Mr. Vandall, and it had no ability to cancel the policy when it was not a party to the contract. Wells Fargo further contends that it informed Mr. Vandall that the flood insurance policy was no longer mandatory after the FEMA flood map change, and that Nationwide informed him that the policy would expire if he did not pay the premium. Wells Fargo specifically asserts it sent Mr. Vandall the notice that his flood insurance was no longer required because it generated the notice with Mr. Vandall's name and address, and sent it via first-class mail. According to the Deed of Trust on

the mortgage signed by Mr. Vandall, any notice sent to Mr. Vandall by Wells Fargo "shall be deemed to have been given to [Mr. Vandall] when mailed by first class mail OR when actually delivered to [Mr. Vandall's] notice address if sent by other means." (Deed of Trust, at ¶ 15) (Document 49-2.) Based on the Deed of Trust language, Wells Fargo argues that it is undisputed that it sent Mr. Vandall the Flood Insurance Notification. Thus, because there is no genuine issue of material fact regarding the Plaintiff's claims that Wells Fargo cancelled his flood insurance and continued to collect payments to pay for that cancelled insurance, and because it is undisputed that Wells Fargo informed Mr. Vandall of the change to his flood insurance requirements, Wells Fargo argues it is entitled to summary judgment on all of Mr. Vandall's claims.

Mr. Vandall counters that Wells Fargo is not entitled to summary judgment. Mr. Vandall first concedes that discovery has shown that "some of the counts [in his complaint] were based on his mistaken understanding that Wells Fargo had cancelled his coverage and then required him to continue to pay the premium . . . and, as a result, are no longer viable." (Pl.'s Resp. in Opp. at 5.) Specifically, Mr. Vandall concedes that his claims for "declaratory relief, conversion, unjust enrichment, and fraud" cannot go forward. (*Id.*) As to the remaining counts, however, the Plaintiff contends that there is a genuine issue of material fact that precludes summary judgment. The Plaintiff asserts that, although Wells Fargo may have sent the notice informing him that his flood insurance was no longer required and therefore his responsibility, he never received that notice. He further asserts that he never received the notice from Nationwide in August of 2013 that his flood insurance policy was about to expire. Because he never received those documents, he contends that there is a genuine issue of material fact as to whether Wells Fargo did, in fact,

7

notify him that flood insurance was no longer necessary, and that summary judgment should be denied.

At the outset, and based on the Plaintiff's concession that Counts I, V, VI, and VIII can no longer go forward, Wells Fargo's motion will be granted as to those counts. The Court further finds that the Defendant's motion should also be granted as to all of the remaining counts. Although Mr. Vandall concedes that Wells Fargo did not cancel his flood insurance nor continue to receive payments from him toward that insurance policy, he continues to contend that Wells Fargo is liable for his loss of flood insurance because it failed to notify him that the flood insurance was no longer required and that it would no longer be paid for out of his escrow account. The Court finds this argument lacking in merit. First, the contract for a flood insurance policy was entered into by Mr. Vandall and Nationwide. Each and every count in his complaint contends that Wells Fargo improperly canceled his flood insurance, but as Mr. Vandall voluntarily concedes, Wells Fargo could not, and did not, cancel his flood insurance policy.

Moreover, it is undisputed that Wells Fargo generated and sent Mr. Vandall the Flood Insurance Notification. Pursuant to the Deed of Trust, any notice or document sent to Mr. Vandall is "deemed to have been given to [him] when mailed by first class mail . . . ." (Deed of Trust, at ¶ 15) (Document 49-2.) Pursuant to West Virginia law, "[i]f the language [of a contract] is unambiguous, it 'must be construed according to its plain and natural meaning.'" *Estep v. Fed. Home Loan Mortg. Corp.*, No. 5:13-CV-02128, 2014 WL 1276495, at *3 (S.D.W. Va. Mar. 27, 2014) (quoting *Fraternal Order of Police, Lodge No. 69 v. Fairmont*, 468 S.E.2d 712, 716 (W.Va. 1996)). A writing is ambiguous if it is "reasonably susceptible of two different meanings." *Estate of Tawney v. Columbia Natural Res., LLC*, 633 S.E.2d 22, 28 (W.Va. 2006). The contract

between Mr. Vandall and Wells Fargo or the Deed of Trust, is unambiguous regarding when notice is deemed delivered. It is clear, plain, and not reasonably susceptible to two different meanings. Mr. Vandall is therefore deemed to have been given any notice in connection with his mortgage when that notice was mailed via first-class mail to his notice address. Pursuant to the deposition testimony of the Defendant's employee, Lorrie Madden, Wells Fargo maintained a log which was a "systematic record that is created when a letter is generated and mailed," and that log indicated that the letter was sent via first-class mail. (Lorrie Madden Depo., at 105:1-106:2) (Document 52-1.) Thus, Wells Fargo has presented evidence that proves it sent the Flood Insurance Notification to Mr. Vandall via first-class mail, and pursuant to the unambiguous language of the Deed of Trust, Mr. Vandall is deemed to have received that notice.

Mr. Vandall's argument that this is not sufficient proof that Wells Fargo sent the notice invites the Court to ignore the evidence. Wells Fargo has presented evidence that it sent the letter via first-class mail through its letter log and notice generating system. Mr. Vandall has not presented evidence that Wells Fargo did not generate the letter or that its letter log and system of generation are falsified. He merely argues that he did not see the notice and thus could not have received it, and that "Wells Fargo cannot rely on the Deed of Trust's provision that Vandall is deemed to have received the notice because it was sent by first-class mail" to dispute Mr. Vandall's testimony. (Pl.'s Resp. in Opp. at 10.) However, Wells Fargo can, in fact, rely on the unambiguous language of the contract entered into by it and Mr. Vandall to show that, when a notice is sent by first-class mail, Mr. Vandall is deemed under the contract to have received it. When contract language is unambiguous, "it is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed." Syl. Pt. 3, *Haynes v.*

9

*DaimlerChrysler Corp.*, 720 S.E.2d 564, 565 (W.Va. 2011). The Deed of Trust language is unambiguous, and Wells Fargo has shown pursuant to its letter log that it generated a Flood Insurance Notice sent to Mr. Vandall via first-class mail. Again, this evidence is undisputed. Mr. Vandall only argues that he did not see the notice he is deemed to have received.

Finally, whether or not Mr. Vandall received the expiration notices from Nationwide is irrelevant to Wells Fargo's liability for his losses. Wells Fargo was not a party to the contract between Mr. Vandall and Nationwide, and what Nationwide did or did not do has no bearing on whether or not Wells Fargo notified Mr. Vandall that flood insurance was no longer required. To the extent that Mr. Vandall argues that Wells Fargo is liable for his losses because he did not receive Nationwide's expiration notice, that argument fails to provide sufficient evidence of a genuine issue of material fact regarding Wells Fargo and its obligations under the Deed of Trust.

In sum, Wells Fargo has shown that it generated and sent to Mr. Vandall, via first-class mail, a notification that flood insurance was no longer required to maintain his mortgage. The Deed of Trust entered into by Mr. Vandall explicitly and unambiguously deems him to have received that notice. Mr. Vandall concedes that Wells Fargo did not have the ability or authority to cancel his flood insurance policy that he personally obtained through Nationwide.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendant Wells Fargo Bank, N.A.'s Motion for Summary Judgment* (Document 49) be **GRANTED**. The Court further **ORDERS** that any pending motions be **TERMINATED AS MOOT**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: July 3, 2018

*Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA